IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2017 MAY 22 AM 10:00
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74231-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ANDREW YIN WONG, | ) | |
| | ) | |
| Appellant. | ) | FILED: May 22, 2017 |
| | ) | |

TRICKEY, A.C.J. — Andrew Wong appeals his felony conviction of possession of a stolen vehicle. Wong argues that his right to a fair trial was infringed when the prosecutor committed misconduct by giving his personal opinion on Wong's narrative of the case, trivializing the State's burden of proof, and telling the jury that there may be no downside to a conviction. Wong further contends that his trial counsel was ineffective for failing to object to or move for a new trial based on the prosecutor's comments on the burden of proof and the effect of a conviction. Because the prosecutor's comments were proper and Wong has not demonstrated that he was prejudiced by them or that he received ineffective assistance of counsel, we affirm.

## FACTS

On the evening of February 3, 2014, Auburn Police Department (APD) Officer Tyson Luce was on patrol. He saw a white Honda car parked across several spaces in an Albertson's grocery store parking lot. Officer Luce conducted a computer records check on the Honda's license plate and saw that it was listed as stolen.

The Honda made a U-turn and passed close to Officer Luce's vehicle. Officer Luce saw that the driver was male, Hispanic or Asian, had dark hair, was approximately 20 to 30 years old, and was wearing a black leather jacket. Officer Luce called for backup and followed the Honda to a McDonald's restaurant.

The Honda entered the McDonald's drive through. While Officer Luce was watching the Honda, he saw a person matching the appearance of the driver run away. Officer Luce moved his car and saw that the Honda's driver side door was open and nobody was in the car. Officer Luce notified dispatch and other officers that the driver had left the Honda.

Officer Luce pursued the driver in his patrol car but lost sight of him. Officer Luce drove to a nearby 7-Eleven store and saw a person matching the driver's appearance standing outside. Less than 10 minutes had elapsed between when Officer Luce lost sight of the driver and saw the person outside the 7-Eleven.

Officer Luce approached the driver, told him he was under arrest, and ordered him to lay on the ground. The driver eventually complied, and a second police unit arrived and placed him in handcuffs. Officer Luce searched the driver incident to arrest. Officer Luce removed a Washington state identification card and

a driver's license identifying the driver as Wong, a set of keys, and a pair of black gloves. Two of the keys were "shaved" or "bump" keys that could be used to start multiple motor vehicles.

Wong was placed in a patrol car and Officer Luce advised him of his Miranda[1] rights. Wong told Officer Luce that he was an automotive technician and was in the area to visit a friend.

Officer Luce returned to the Honda and observed that it was running without a key in the ignition. This was consistent with someone having used a shaved key to start the vehicle.

APD Detective Joshua Matt interviewed Wong at the Regional Justice Center. Detective Matt advised Wong of his Miranda rights. Wong told Detective Matt that Wong's good friend Chris had dropped him off at the 7-Eleven. Wong said he did not know Chris's last name and Wong did not provide any contact information for Chris. When asked about the shaved keys in his possession, Wong responded that he was an automotive technician. Wong said he knew that shaved keys were frequently used for vehicle theft, but did not give a reason for why an automotive technician would need them.

Rory Pesacreta, the owner of the Honda, stated that the Honda had been stolen from a Fred Meyer grocery store in Renton in January 2014. Pesacreta said that the keys and gloves recovered from Wong did not belong to him. Pesacreta testified that he did not know Wong and that Wong did not have permission to use the Honda.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Wong did not testify or call any witnesses at trial.

During closing argument, the prosecutor summarized Officer Luce's testimony and then said that Wong's narrative did not make sense. Wong objected and was overruled by the trial court.

Later in his closing argument, the prosecutor analogized the beyond a reasonable doubt standard of proof to the certainty that the light in a refrigerator goes out when the door closes. Wong did not object.

During rebuttal, the prosecutor gave the jury an explanation of the trial court's first instruction. The prosecutor told the jury that it was not allowed to consider the punishment or any other downside that could follow from a guilty verdict. Wong did not object.

The jury found Wong guilty of possession of a stolen vehicle. Wong appeals.

## ANALYSIS

### Prosecutorial Misconduct

Wong argues that the prosecutor committed misconduct and deprived Wong of a fair trial when he disparaged Wong's narrative of the case, trivialized the State's burden, and erroneously told the jury that there may be no downside to a conviction. The State responds that all three comments were proper, and even if they were improper Wong has not shown that he was prejudiced. We agree with the State.

"The right to a fair trial is a fundamental liberty secured by the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22

of the Washington State Constitution." In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 703, 286 P.3d 673 (2012). "[A] prosecutor cannot use his or her position of power and prestige to sway the jury and may not express an individual opinion of the defendant's guilt, independent of the evidence actually in the case." Glasmann, 175 Wn.2d at 706.

"Prosecuting attorneys are quasi-judicial officers who have a duty to subdue their courtroom zeal for the sake of fairness to a criminal defendant." State v. Fisher, 165 Wn.2d 727, 746, 202 P.3d 937 (2009). Thus, misconduct by a prosecutor may infringe on a defendant's right to a fair trial. State v. Davenport, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984).

The court applies a two-prong test for determining whether prosecutorial misconduct requires reversal: "(1) whether the prosecutor's comments were improper and (2) if so, whether the improper comments caused prejudice." State v. Lindsay, 180 Wn.2d 423, 431, 326 P.3d 125 (2014) (citing State v. Warren, 165 Wn.2d 17, 26, 195 P.3d 940 (2008)). The prosecuting attorney is presumed to act impartially. Fisher, 165 Wn.2d at 746. To prove prejudice, the defendant must prove that "'there is a substantial likelihood [that] the instances of misconduct affected the jury's verdict.'" State v. Thorgerson, 172 Wn.2d 438, 442-43, 258 P.3d 43 (2011) (alteration in original) (internal quotation marks omitted) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)).

"When reviewing a claim that prosecutorial misconduct requires reversal, the court should review the statements in the context of the entire case."

Thorgerson, 172 Wn.2d at 443 (citing State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)).

*Personal Opinion on Defense*

Wong argues that the prosecutor committed misconduct by improperly offering his personal opinion on Wong's credibility by disparaging Wong's narrative of the facts. The State responds that the prosecutor was not expressing personal opinion because his statements were reasonable inferences from the evidence presented at trial. We agree with the State.

"In closing argument the prosecuting attorney has wide latitude to argue reasonable inferences from the evidence, including evidence respecting the credibility of witnesses." Thorgerson, 172 Wn.2d at 448. But the prosecutor may only use probative evidence, and should not use arguments that inflame the passion or prejudice of the jury. Glasmann, 175 Wn.2d at 704. The prosecutor must refrain from offering personal opinions on the guilt of the defendant or the credibility of witnesses. Lindsay, 180 Wn.2d at 437.

A prosecutor improperly expresses personal opinion "(1) if the prosecutor expresses his or her personal belief as to the veracity of the witness or (2) if the prosecutor indicates that evidence not presented at trial supports the witness's testimony." State v. Ish, 170 Wn.2d 189, 196, 241 P.3d 389 (2010) (citing United States v. Brooks, 508 F.3d 1205, 1209 (9th Cir. 2007)).

"'Prejudicial error does not occur until . . . it is *clear and unmistakable that counsel is not arguing an inference from the evidence, but is expressing a personal*

opinion.'" State v. McKenzie, 157 Wn.2d 44, 54, 134 P.3d 221 (2006) (quoting State v. Papadopoulos, 34 Wn. App. 397, 400, 662 P.2d 59 (1983).

Here, when viewed in the context of the entire case, the prosecutor's description of Wong's narrative was not improper. During closing argument, the prosecutor summarized Officer Luce's testimony and then called Wong's narrative "bologna" and "a made up story because it doesn't make any sense."[2] Wong objected, arguing that the State was not permitted to "inject personal opinions and attacks and we're approaching that."[3] The trial court decided that the prosecutor's comments did not rise to the level of personal opinion or attacks and overruled the objection. The prosecutor continued to describe Wong's narrative as "nonsense."[4]

The prosecutor's statements were not improper expressions of personal opinion on Wong's credibility or guilt. The prosecutor first gave a detailed summary of Officer Luce's testimony describing the events leading up to his encounter with Wong at the 7-Eleven. He then contrasted Officer Luce's testimony with Wong's narrative that he had been dropped off by a good friend whose last name Wong could not recall. The prosecutor called Wong's narrative "bologna," "made up," and "nonsense," but then reiterated that Officer Luce's testimony contradicted Wong's statements to police. Thus, the prosecutor's comments were based on the testimony presented at trial and inferences therefrom, and did not constitute improper personal opinion on Wong's guilty or credibility.[5]

---

[2] Report of Proceedings (RP) (June 9, 2015) at 236-38.

[3] RP (June 9, 2015) at 238-39.

[4] RP (June 9, 2015) at 239.

[5] Wong analogizes to several cases from other jurisdictions in support of his contention that the prosecutor's comments in this case were improper. See State v. Acker, 265 N.J. Super. 351, 356, 627 A.2d 170 (App. Div. 1993); United States v. Sanchez, 176 F.3d 1214,

Moreover, Wong has not shown that he was prejudiced by the prosecutor's comments. Wong argues that the State's case against him was weak because Officer Luce lost sight of the car's driver, his description of the driver was vague, and Wong was not out of breath or sweating when Officer Luce encountered him at the 7-Eleven. But Officer Luce lost sight of the driver for only a short period of time and the State's case against Wong was supported by other evidence, including his possession of shaved keys and his inability to sufficiently identify his friend Chris. Wong also argues that the prejudicial impact of the prosecutor's improper comment was enhanced because the court overruled Wong's objection. Because the prosecutor's comment was not improper, the court's denial of Wong's objection did not enhance its prejudice.

In sum, the prosecutor's comments were not improper because they were based on the evidence presented at trial and reasonable inferences therefrom and thus did not infringe on Wong's right to a fair trial. Further, even if the comments were improper, Wong has not shown that the comments prejudiced him.

*Trivialization of Burden of Proof*

Wong argues that the prosecutor committed misconduct when he improperly trivialized the burden of proof by comparing it to the certainty that the light in a refrigerator goes off when the door closes. The State argues that the prosecutor properly used the analogy to explain that circumstantial evidence was

---

1225 (9th Cir. 1999); State v. Holly, 228 N.C. App. 568, 749 S.E.2d 110 (2013; Ross v. State, 726 So.2d 317, 319 (Fla. Dist. Ct. App. 1998). The cases cited by Wong are distinguishable from the present case because they involved repeated and egregious prosecutorial comments that go far beyond what is at issue in the present case. We do not find them persuasive.

sufficient to meet the standard of proof and that Wong has not shown that the argument was flagrant and ill intentioned. We agree with the State.

A misstatement about the standard of proof or the presumption of innocence "constitutes great prejudice because it reduces the State's burden and undermines a defendant's due process rights." State v. Johnson, 158 Wn. App. 677, 686, 243 P.3d 936 (2010). A prosecutor may not minimize the gravity of the State's burden by comparing it to the certainty people generally require when they made everyday life decisions. State v. Anderson, 153 Wn. App. 417, 431, 220 P.3d 1273 (2009).

If the defendant fails to object to the allegedly improper remark, the court will not find reversible "error unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." Russell, 125 Wn.2d at 86; see Anderson, 153 Wn. App. at 431-32 (although prosecutor's analogy of reasonable doubt standard to everyday decision-making and comment implying that jury had to find a reason to find Anderson not guilty were improper, defendant failed to object below and did not demonstrate on appeal that the comments were so flagrant or ill intentioned that an instruction could not have cured the prejudice).

Here, the prosecutor's analogy was not improper. The prosecutor analogized the beyond a reasonable doubt standard of proof to the certainty that the light in a refrigerator turns off when the door is closed to assert to the jury that the State may rely on circumstantial evidence and still meet its burden of proving its case beyond a reasonable doubt. The prosecutor's analogy did not relate to the certainty that jurors might require when making other decisions in their lives.

Rather, it concerned the level of certainty that a particular phenomenon occurred despite there not being direct evidence supporting that certainty. Further, during rebuttal the prosecutor emphasized to the jury that Wong benefited from the presumption of innocence and that the State bore the burden of proving his guilt beyond a reasonable doubt. Thus the prosecutor did not use the analogy to improperly minimize the gravity of the State's burden of proof or the presumption of innocence.

Further, Wong did not object to the prosecutor's analogy. Therefore he must show that the prosecutor's analogy resulted in an enduring and resulting prejudice that could not be cured by a curative instruction. Wong has not made that showing. Wong argues that the prosecutor's comments trivializing the State's burden of proof deprived him of a fair trial. But he does not argue that a curative instruction would not have addressed the effect of this analogy if it was improper. Thus, Wong has not demonstrated that the prosecutor's analogy was so flagrant and ill intentioned that an instruction below would not have cured the prejudice.

*Minimization of Importance of Jury's Role*

Wong argues that the prosecutor committed misconduct by improperly minimizing the importance of the jury's decision when he said during closing argument to the jury that there may be no downside to a criminal conviction. The State responds that Wong mischaracterizes the prosecutor's argument, which was a response to Wong's statements during closing argument and was a correct statement that the jury could not consider what punishment may be imposed on Wong. We agree with the State.

- 10 -

"Generally, in noncapital cases, the jury's sole function is to decide the defendant's guilt or innocence, and it should 'reach its verdict without regard to what sentence might be imposed.'" State v. Rafay, 168 Wn. App. 734, 776, 285 P.3d 83 (2012) (internal quotations marks omitted) (quoting Shannon v. United States, 512 U.S. 573, 579, 114 S. Ct. 2419, 129 L. Ed. 2d 459 (1994)).

Generally, remarks made by a prosecutor in response to defense counsel are not reversible error unless they "go beyond a pertinent reply and bring before the jury extraneous matters not in the record, or are so prejudicial that an instruction would not cure them." State v. La Porte, 58 Wn.2d 816, 822, 365 P.2d 24 (1961). For example, the Court of Appeals has held that a prosecutor's repeated comments on the judge's role in determining a defendant's punishment during rebuttal, despite several sustained objections, was improper. State v. Torres, 16 Wn. App. 254, 262-63, 554 P.2d 1069 (1976).

A defendant who fails to object to an improper remark cannot later challenge that remark unless it is so flagrant and ill intentioned that it could not have been cured by an additional instruction. Russell, 125 Wn.2d at 86.

The jury instructions said in relevant part, "You have nothing whatever to do with any punishment that may be imposed in case of a violation of the law. You may not consider the fact that punishment may follow conviction except insofar as it may tend to make you careful."[6] During the defense's closing argument, Wong reminded the jury that the crime at issue was a felony. During rebuttal, the prosecutor referred the jury to the instructions they had been given. He then

---

[6] Clerk's Papers at 20-21 (Instruction 1).

explained to the jury that "you're not supposed to even consider the level of downside if there is a downside to a conviction. There's no punishment consideration that you're allowed to make."[7]

If the prosecutor had suggested that there was no downside to a criminal conviction, the argument would be improper. But here, the prosecutor did not argue that a guilty verdict would not impact Wong. When read in context, the prosecutor's remarks are in response to Wong's statements during his closing argument that the crime at issue was a felony. The jury instruction told the jury that, "You may not consider the fact that punishment may follow a conviction except insofar as it may tend to make you careful."

In explaining this instruction, the prosecutor accurately stated that even if Wong would be negatively impacted by a criminal felony conviction, the jury was not allowed to consider that effect. The prosecutor's statement that the jury could not consider any negative effect of a criminal conviction is not equivalent to arguing that there may be none at all, and Wong has not shown that the remarks were beyond the scope of an acceptable reply.[8] Therefore, the prosecutor's argument did not unfairly trivialize the jury's decision by arguing that convicting Wong would have no effect.

---

[7] RP (June 9, 2015) at 264-65.

[8] During closing argument, Wong asked the jurors "Would you bet your house on it? Would you bet your kids' future on it?" when discussing the reasonable doubt standard. RP (June 9, 2015) at 263. In rebuttal, the prosecutor referred back to these rhetorical questions when explaining the jury instruction. Wong argues that the prosecutor's response exceeded its permissible scope. As discussed above, the prosecutor's comments were not improper. Further, Wong has not argued that he suffered from incurable prejudice.

Wong contends that it was disingenuous for the prosecutor to tell the jury that there may be no downside to a conviction. Wong then describes the impact of a felony conviction on defendants, and contends that the prosecutor's statement contributed to the unfairness that permeated the trial. This argument does not have merit. The prosecutor was correctly explaining to the jury that it could not consider the ultimate punishment imposed on Wong following a guilty verdict, including any potential downsides that may result. Thus the prosecutor's comment was not disingenuous.

Moreover, Wong did not object to the prosecutor's argument. On appeal, Wong had to show that the comment was so flagrant and ill intentioned that further instruction from the trial court would not have cured any prejudice in order for this court to review it. Wong has argued that the prosecutor's comments minimized the jury's role and thus deprived him of a fair trial. But Wong has not argued that the comments were flagrant and ill intentioned, or that they could not have been cured by further instruction from the trial court. Therefore, even if the prosecutor's argument was improper, Wong has not shown that it may be reviewed on appeal.

*Cumulative Error*

Wong argues that the prejudice of the three challenged comments of the prosecutor combined to deprive him of a fair trial.

The cumulative error doctrine applies when "there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial." State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). "The doctrine does not apply where the errors are few and

- 13 -

have little or no effect on the outcome of the trial." State v. Weber, 159 Wn.2d 252, 279, 149 P.3d 646 (2006).

Here, the cumulative error doctrine does not apply because the prosecutor's comments were all proper and thus did not prejudice Wong. Further, even assuming that the comments were improper, Wong has not argued how the alleged improper comments affected the outcome of the trial beyond asserting that the jury "would have found a reasonable doubt and voted to acquit."[9] This conclusory assertion is insufficient to show that prejudice, if any, from the prosecutor's comments affected the outcome of the trial.

## Ineffective Assistance of Counsel

Wong argues that, if this court concludes that the prosecutor's comments were improper and could have been cured by an instruction, he received ineffective assistance of counsel. Specifically, Wong argues that counsel should have objected to the prosecutor's statements about the burden of proof and about the effect of a criminal conviction, or moved for a mistrial. The State responds that Wong's counsel was not deficient because the prosecutor's remarks were not improper and Wong has not established sufficient prejudice. We agree with the State.

"To prove that he was denied his right to effective assistance of counsel, a defendant must demonstrate both that the trial counsel's conduct fell below a minimum objective standard of reasonable attorney conduct and that the deficient performance prejudiced him." State v. West, 139 Wn.2d 37, 41-42, 983 P.2d 617

---

[9] Br. of Appellant at 10.

(1999) (citing Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). A defendant must establish both prongs to support a claim of ineffective assistance of counsel. Strickland, 466 U.S. at 687. To show prejudice, a defendant must establish "that, but for his counsel's errors, the result of the proceeding would have been different." West, 139 Wn.2d at 42.

Whether counsel was constitutionally ineffective is a mixed question of law and fact that this court reviews de novo. In re Pers. Restraint of Fleming, 142 Wn.2d 853, 865, 16 P.3d 610 (2001).

Here, Wong was not denied his right to effective assistance of counsel. Both of the challenged comments were proper and thus did not prejudice Wong. Wong has not shown that his counsel's alleged deficiencies prejudiced him. Wong argues that without those arguments, "the jury would have been far more likely to find reasonable doubt" based on the facts presented at trial.[10] This is insufficient to show that the outcome of the trial would have been different had Wong's trial counsel objected to the prosecutor's statements. As discussed above, the prosecutor's comments challenged in this case were not improper. Therefore, Wong cannot show that the court would have sustained any objection to them. Therefore we conclude that Wong has not established either the deficient performance or prejudice necessary to support his claim of ineffective assistance of counsel.

---

[10] Br. of Appellant at 16.

## Appellate Costs

Wong asks that no costs be awarded on appeal. Appellate costs are generally awarded to the substantially prevailing party on review. RAP 14.2. But when a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency." RAP 14.2.

Here, Wong was authorized to proceed as an indigent party on appeal. If the State has evidence indicating that Wong's financial circumstances have significantly improved since the trial court's finding, it may file a motion for costs with the commissioner.

Affirmed.

Trickey, ACJ

WE CONCUR:

Mann, J.

Spearman, J.