# Third District Court of Appeal

## State of Florida

Opinion filed February 22, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-2542
Lower Tribunal No. 14-6548
_____

**Graciela Pineda,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Cristina Miranda, Judge.

Carlos J. Martinez, Public Defender, and Robert Kalter, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Jeffrey R. Geldens, Assistant Attorney General, for appellee.

Before WELLS, ROTHENBERG, and SALTER, JJ.

ROTHENBERG, J.

The defendant, Graciela Pineda, appeals her convictions for lewd or lascivious molestation of a child under twelve years of age and lewd or lascivious conduct on a child under sixteen years of age. The defendant claims that she is entitled to a new trial because the unobjected-to testimony of the lead investigator and the unobjected-to comments by the prosecutor during closing arguments improperly bolstered the victim's credibility and constitute fundamental error because they deprived the defendant of a fair trial. Based on our conclusion that the complained-of testimony and statements do not constitute improper bolstering of the victim's credibility and/or they were invited by defense counsel, we affirm.

## I. FACTS

The State charged the defendant with the above referenced crimes. At the time of the charged offenses, the ten year old victim, her mother, and the victim's two younger siblings were living at a facility for female victims of domestic violence and their children. The charges were based on the victim's allegations that she woke up and found the defendant, who was a resident at the domestic violence facility and a guest at the victim's home, sitting on the bed and leaning over her, touching her (the victim's) breast under her top, and thereafter, the defendant attempted to kiss the victim and pull down her panty.

Based on the lack of physical evidence or an eyewitness, the State's case rested on the credibility of the victim. During opening statements, the defense set

forth its defenses for the jury—the victim, who had a motive to fabricate the allegations against the defendant, was lying, and law enforcement's investigation of the case was "substandard at best."

At trial, the lead investigator, Sergeant Utset, testified on direct examination as follows. He was a member of the Special Victims Bureau assigned to investigate the allegations made by the victim against the defendant. When he arrived at the domestic violence facility, he spoke with the victim without anyone else being present. He asked the victim what had occurred, and the victim, who was crying and appeared to be upset and scared, gave him a "summary of what happened," implicating the defendant. Sergeant Utset did not ask the victim for details because he was going to refer her for a forensic interview at Kristi House.

Sergeant Utset also testified that he interviewed the defendant, who was then nine months pregnant, later that evening at the police station after she waived her Miranda[1] rights. During this interview, the defendant claimed that the victim was not telling the truth. When Sergeant Utset asked the defendant why the victim would make up these allegations, the defendant responded that the victim was upset because she (the defendant) told the victim's mother that she (the defendant) had seen the victim holding hands with a boy who lives at the facility. After Sergeant Utset told the defendant that this explanation did not make sense, the

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

defendant told Sergeant Utset that the victim's mother got the victim to make up the accusations so that the victim's mother could keep the defendant's car if the defendant went to jail. When Sergeant Utset told the defendant that this statement also did not make any sense, the defendant became upset and told Sergeant Utset that she would not have done what the victim was accusing her of because she (the defendant) was pregnant with a girl. Sergeant Utset terminated the interview because the defendant was becoming very upset.

During cross-examination, defense counsel asked Sergeant Utset about his investigation, and the following exchange occurred:

> **Q:** You are a detective?
> **A:** Yes.
> **Q:** And that is your job to detect and ask questions?
> **A:** Yes, it is.
> **Q:** You just don't take somebody's word?
> **A:** Why would they lie. What reason would they have to lie?
> **Q:** Your job -- is that your job just to take what anybody says, to be gospel?
> **A:** To be gospel?
> **Q:** You said why would anybody lie?
> **A:** Why would the victim lie.
> **Q:** Well, the victim is a person, right?
> **A:** She is a child.
> **Q:** You don't think that children lie?
> **A:** Not about serious situations, no.
> **Q:** You indicated earlier on direct examination -- so, every child that you've interviewed, you've arrested the person who they made the accusation against and you sustained an accusation, correct?
> **A:** No, sir.
> **Q:** Why would a child lie? Well, let's see. Let's ask the more pertinent question. Why wouldn't a detective do a complete examination?

4

**A:** I did do a complete examination.

Thereafter, defense counsel continued to question Sergeant Utset about the manner in which he conducted the investigation, such as waiting six months to photograph the residence, failing to check for any DNA, and failing to interview certain individuals.

On re-direct by the State, Sergeant Utset testified as follows:

> **Q:** Are you trained to look for motive when you speak to children?
> **A:** Yes, ma'am.
> **Q:** Did you see any in this case?
> **A:** I did not.

During closing arguments, the State argued that the victim's mother and the defendant were good friends. The victim liked the defendant. The victim and the defendant had done each other's nails and hair and the defendant had given the victim her jewelry. There was no reason for the victim to make up the allegations, and the explanations given by the defendant at the police station regarding why she thought the victim would make up these allegations did not make sense.

During closing arguments, defense counsel argued that the victim, who wants to be an actress, fabricated the allegations and gave an "Oscar performance" in an effort to back up her lies. In response to defense counsel's argument, the State argued again in its rebuttal that there was no reason for the victim to lie.

The jury found the defendant guilty as charged, and she was later sentenced.

The defendant's appeal followed.

## II.  ANALYSIS

The defendant contends that she is entitled to a new trial because the unobjected-to testimony of the lead investigator, Sergeant Utset, and the unobjected-to comments by the prosecutor during closing arguments constitute fundamental error as the testimony and comments improperly bolstered the victim's credibility, thereby depriving the defendant of a fair trial.  In the alternative, the defendant contends that if this Court finds no fundamental error, she is nonetheless entitled to a new trial because trial counsel provided ineffective assistance of counsel by failing to object to these allegedly improper comments, and the ineffectiveness is apparent on the face of the record.

## A.  **Alleged Fundamental Error**

"Fundamental error is error which 'reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'"  Martinez v. State, 933 So. 2d 1155, 1158 (Fla. 3d DCA 2006) (citing State v. Delva, 575 So. 2d 643, 644-45 (Fla. 1991) (quoting Brown v. State, 124 So. 2d 481, 484 (Fla. 1960)).

*1.  Sergeant Utset's testimony on cross and re-direct examination*

The defendant contends that Sergeant Utset first bolstered the victim's credibility in his response to the following question posed by defense counsel

6

regarding Sergeant Utset's investigation: "You just don't take somebody's word?" The question by defense counsel did not specifically reference the victim or ask Sergeant Utset if he was just taking the victim at her word. Thus, when Sergeant Utset responded, "Why would they lie. What reason would they have to lie," he was answering defense counsel's question, and he was not specifically referring to the victim, rather he was referring to witnesses in general. Therefore, at that point, Sergeant Utset had not bolstered the victim's credibility. More importantly, if defense counsel had believed this response was unresponsive or objectionable, defense counsel had the opportunity to object or to move away from that line of questioning. Instead, defense counsel used Sergeant Utset's response to bolster the defenses raised—that the victim was lying and Sergeant Utset did not perform a thorough investigation—and followed up by asking, "Your job -- is that your job just to take what anybody says, to be gospel?" and "You said why would anybody lie?" In response, Sergeant Utset either stated or asked: "Why would the victim lie."[2] Defense counsel responded by stating, "Well, the victim is a person, right?" When Sergeant Utset noted that the victim was a child, defense counsel asked Sergeant Utset whether he believed children, in general, lie. Again, in response to defense counsel's question, Sergeant Utset answered that he did not think that children lie "about serious situations."

_____

[2] Although this appears to be a question, the transcript ends Sergeant Utset's testimony with a period, rather than with a question mark.

As detailed above, the record reflects that Sergeant Utset's answers during cross-examination were in direct response to defense counsel's questions, and were also relevant to defense counsel's personal attack of Sergeant Utset as an investigator and defense counsel's characterization of Sergeant Utset's investigation as "substandard at best." See State v. Joseph, 419 So. 2d 391, 392 (Fla. 3d DCA 1982) ("Any evidence tending to prove or disprove a material fact is relevant, and any fact relevant to the issue is admissible into evidence unless precluded by a specific rule of exclusion.") (internal citations omitted).

To counter the specific questions posed by defense counsel and in an effort to rehabilitate Sergeant Utset, the State merely asked Sergeant Utset during the State's re-direct examination if Sergeant Utset was trained to look for a motive to lie and whether he saw a motive in the instant case. See Torres-Matmoros v. State, 34 So. 3d 83, 85 (Fla. 3d DCA 2010) (finding that "the arresting officer's re-direct testimony did not constitute bolstering, but only clarification of testimony adduced by Torres-Matmoros on cross-examination"). In response, Sergeant Utset testified that he was trained to look for a witness's motive to lie and, in this particular case, he did not find a motive. At no time, did Sergeant Utset express his opinion as to the victim's credibility; rather, he testified as to his investigation and the results of his investigation, which were at issue and relevant in this case.

We therefore conclude that Sergeant Utset's testimony on cross and re-direct

examination do not constitute improper bolstering of the victim. However, even if Sergeant Utset's responses did constitute improper bolstering of the victim, we need not reach the issue of whether the unobjected-to testimony constitutes fundamental error because defense counsel clearly invited Sergeant Utset's responses. Universal Ins. Co. of N. Am. v. Warfel, 82 So. 3d 47, 65 (Fla. 2012) ("Fundamental error is waived under the invited error doctrine because 'a party may not make or invite error at trial and then take advantage of the error on appeal.'") (quoting Sheffield v. Superior Ins. Co., 800 So. 2d 197, 202 (Fla. 2001)); Louidor v. State, 162 So. 3d 305, 311 (Fla. 3d DCA 2015) ("We need not reach the issue of whether the admission of the objectionable evidence constituted fundamental error in this case, however, because we conclude that the error was invited by the defense.").

2. *The prosecutor's closing arguments*

Likewise, we conclude that the unobjected-to comments made by the prosecutor during closing arguments do not constitute improper bolstering, but rather they were fair comments on the evidence presented at trial, including whether, during his investigation, Sergeant Utset had discovered a motive for the victim to lie. The prosecutor argued that the evidence presented at trial showed that, prior to the charged crimes, both the victim and her mother got along with the defendant. Further, during the investigation, law enforcement attempted to

9

discover a motive for the victim to fabricate the allegations, but could not find one. At no time did the prosecutor inject herself into the trial by expressing her personal opinion as to whether the victim fabricated the accusations. Accordingly, we conclude that the prosecutor did not bolster the victim's credibility during closing arguments, and if there was error, the error was invited.

In fact, the only improper bolstering was by defense counsel who expressed his own opinion about the credibility of the witnesses and the innocence of the defendant.

> Defense Counsel: You heard from Jesemy [a defense witness]. You can make a determination of whether she is credible. **I don't think that Jesemy Placeres would come in here and say anything but the truth in a case of this magnitude about children.** She will not -- you make a credibility call. **I don't think she is capable of doing that.**
> . . . .
> Defense Counsel: My client is completely innocent. My client is the victim in this case and **you know what really bothers me, throughout the litigation, which makes the hairs of the back of my head stand up**, when they say to you or anybody else, why would she make this up with a serious face?

(emphasis added).

## B. Ineffective Assistance of Counsel

The defendant also argues that if we conclude that no fundamental error occurred, we should take the extraordinary step on direct appeal and find that the defendant's trial counsel's failure to object to Sergeant Utset's testimony and the prosecutor's closing arguments constitutes ineffective assistance of counsel on the

face of the record. "As a general rule, claims of ineffective assistance of counsel are not ordinarily cognizable on direct appeal. The exception is when the error is apparent on the face of the record, which is rarely the case." See Desire v. State, 928 So. 2d 1256, 1257 (Fla. 3d DCA 2006). An alleged error is not apparent on the face of the record if the record reflects that trial counsel's failure to object may have been strategic. See Johnson v. State, 181 So. 3d 1243 (Fla. 3d DCA 2015) (rejecting claim of ineffective assistance of trial counsel on direct appeal where trial counsel's decision may have been strategic); Barnett v. State, 181 So. 3d 534, 536 (Fla. 1st DCA 2015) (holding that to prevail on a claim of ineffective assistance of counsel on direct appeal, "appellant must demonstrate 'ineffectiveness on the face of the record, indisputable prejudice, and an inconceivable tactical explanation for the conduct'") (quoting Morales v. State, 170 So. 3d 67, 67 (Fla. 1st DCA 2015)); Johnson v. State, 942 So. 2d 415, 416 (Fla. 2d DCA 2006) (rejecting claim of ineffective assistance of trial counsel on direct appeal where trial counsel's decision may have been strategic).

In the instant case, we find that defense counsel specifically invited the responses he solicited from Sergeant Utset and that Sergeant Utset's answers to these questions played right into defense counsel's defenses in this case. Because defense counsel's failure to object to these statements appears to have been strategic, and, in fact, welcomed, we do not find ineffective assistance of counsel

11

on the face of this record.

### III. CONCLUSION

Based on our conclusions that Sergeant Utset's testimony and the prosecutor's closing arguments do not constitute improper bolstering of the victim's credibility; any error was invited; and there may have been a strategic reason for pursuing the line of questioning that spawned the unobjected-to answers and arguments that followed, we affirm the defendant's convictions and sentences.

Affirmed.